UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**JAMIE WAMBLES,**

    **Plaintiff,**

v.                           **CASE NO. 3:24-cv-173-MCR-HTC**

**J. BROWN,**

    **Defendant.**

_____/

## ORDER

Plaintiff Jamie Wambles, an inmate in the Florida Department of Corrections ("FDOC") proceeding *pro se*, filed a civil suit under 42 U.S.C. § 1983 alleging Defendant J. Brown, the warden of Walton Correctional Institution ("Walton CI"), failed to protect him from being raped by three other inmates in September 2023. *See* ECF No. 1. Magistrate Judge Cannon issued a Report and Recommendation on November 5, 2024 that dismissed Wambles' Complaint without prejudice for failure to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See* ECF No. 58. The Court furnished the parties a copy of the Report and Recommendation and afforded an opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). I have made a *de novo* determination of all timely filed objections. After careful consideration, the Report

and Recommendation will not be adopted, and this matter will be recommitted to Magistrate Judge Cannon for further consideration consistent with this Order.

"Our legal system [is] committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law." *Jones v. Bock*, 549 U.S. 199, 203 (2007). To ensure that unmeritorious claims do not crowd out those with merit, the PLRA mandates that inmates exhaust available administrative remedies before filing a lawsuit about prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted."). The exhaustion requirement also serves to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citation modified).

Exhaustion is "an affirmative defense under the PLRA," *Jones*, 549 U.S. at 211, and is "not jurisdictional," *Woodford*, 548 U.S. at 101. It's well-settled that "the failure to exhaust administrative remedies requires dismissal of the action." *Wright v. Georgia Dep't of Corr.*, 820 F. App'x 841, 843 (11th Cir. 2020) (citation modified). State law "determines what steps are required to exhaust." *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones*, 549 U.S. at 218

CASE NO. 3:24-cv-173-MCR-HTC

(stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). And "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90 (citation modified).[1]

There's an important limit, however, embedded in the text of the PLRA: "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). To be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–23 (11th Cir. 2007)). But "to state that standard, of course, is just to begin; courts . . . must apply it to the real-world workings of prison grievance systems." *Ross*, 578 U.S. at 643. In *Ross*, the Supreme Court identified three instances in which an administrative remedy would be unavailable. First, when the administrative procedure operates as a simple "dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *Id.* Second, when

---

[1] The FDOC has promulgated a three-step grievance procedure: (1) the inmate files an informal grievance within twenty days of the incident; (2) if the grievance is not resolved informally, then the inmate files a formal grievance at the institutional level within fifteen days from the date the informal grievance was responded to; and (3) if the inmate is unhappy with the formal grievance response, then the inmate appeals to the FDOC Secretary/Central Office within fifteen days of the response to the formal grievance. See Fla. Admin. Code Ann. r. 33-103.005-007, 011 (2018).

an administrative scheme is so opaque that it is incapable of use; stated differently, a grievance mechanism exists on paper, but no ordinary prisoner can discern or navigate it. *Id.* at 643–44. Third, when prison administrators thwart inmates from taking advantage of a grievance process through "machination, misrepresentation, and intimidation." *Id.*

When a defendant raises PLRA exhaustion in a motion to dismiss, the Eleventh Circuit requires district courts to apply a two-step framework. *Turner*, 541 F.3d at 1082–83. Under the first step, courts must "look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). If the facts as stated by the prisoner show a failure to exhaust, then the case should be dismissed at step one. *Id.* If not, courts proceed to step two, where they "consider facts outside of the pleadings," *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) (citation modified), resolve credibility determinations, *id.* at 1377–78, and "make specific findings to resolve disputes of fact," *Whatley*, 802 F.3d at 1209 (citation modified). Courts should dismiss at step two "if, based on those findings, defendants have shown a failure to exhaust." *Id.*

Turning to the Report and Recommendation, Judge Cannon found at step two that Wambles' "conclusory and self-serving allegations" that some of the grievances

he submitted were lost, destroyed, or intercepted by prison staff at Walton CI shortly after he was raped were "simply not enough . . . to resolve the factual disputes in his favor." ECF No. 58 at 13.[2]  The undersigned sees two issues that counsel against adopting the Report and Recommendation and in favor of recommitting the matter for further factual development.

First, the undersigned is concerned that, after exhaustion was raised by Brown's motion to dismiss, the Court never notified Wambles that he had an opportunity to develop a factual record.  "Before a court may look to facts outside the pleadings, it must give the parties a sufficient opportunity to develop a record." *Kinard v. Fla. Dep't of Corr.*, 2024 WL 4785003, at *6 (11th Cir. Nov. 14, 2024) (citation modified).  The Eleventh Circuit recently reminded district courts that this requires that a party, especially those proceeding *pro se*, be provided "fair notice" of this opportunity to submit evidence related to exhaustion.  *Id.*[3]  Although Wambles was instructed that any opposition to Brown's motion to dismiss should "show why

---

[2] Judge Cannon rightly concluded that this issue could not be decided at step one of the Eleventh Circuit's framework.  *See Montalban v. Doe*, 801 F. App'x 710, 711 (11th Cir. 2020) (holding that district court must apply both *Turner* steps to plaintiff's argument that administrative remedies were practically unavailable to him); *Abram v. Leu*, 759 F. App'x 856, 861 (11th Cir. 2019) (holding that district court must conduct the two-step inquiry when plaintiff's allegations raise the question of whether administrative remedies were available).

[3] At the time of the Report & Recommendation, Judge Cannon did not have the benefit of the Eleventh Circuit's recent (albeit unpublished) opinion in *Kinard*.

CASE NO. 3:24-cv-173-MCR-HTC

the motion should not be granted," ECF No. 36 at 1 (citation modified), and Wambles in fact responded with evidence of his own at a later time (on his own initiative), ECF No. 53, the undersigned cannot be sure that Wambles was apprised of the litigation-ending consequences that could follow if he failed to submit sufficient evidence on exhaustion.

Second, and relatedly, the Report and Recommendation generally gives short shrift to Wambles' claims that some of his grievances were lost, destroyed, or intercepted by prison staff, ostensibly casting them aside as litigation gamesmanship. True, inmates sometimes marshal unfounded claims that their custodians misplaced or threw away their grievances in a last-ditch effort to justify why they failed to exhaust the administrative remedies theoretically available to them. *See, e.g.*, *Stewart v. Coates*, No. 3:21-cv-00719-MCR-ZCB, 2023 WL 5352930, at *6–*7 (N.D. Fla. July 3, 2023), *report and recommendation adopted*, 2023 WL 5352611 (N.D. Fla. Aug. 21, 2023); *cf. Woodford*, 548 U.S. at 90 (observing that "exhaustion requirements are designed to deal with parties who do not want to exhaust"). But other times, there's something to these allegations. *See, e.g.*, *Stallworth v. Williams*, No. 5:17-cv-306-MCR-GRJ, 2022 WL 19235783, at *8 (N.D. Fla. July 29, 2022), *report and recommendation adopted*, 2023 WL 2614638 (N.D. Fla. Mar. 23, 2023).

CASE NO. 3:24-cv-173-MCR-HTC

Page 7 of 8

This case may hue closer to the latter.[4]  Wambles has long accused the Walton CI staff of destroying his original grievances from September 2023 related to the alleged rape.  Just a month after he was allegedly assaulted (and well before filing this lawsuit), Wambles complained that he "tried to report [the rape] by telling staff and writing request forms to the Warden, Asst. Warden, [and] Classification . . . but . . . . got no response from nobody"—"they are trying to cover it up."  *See* ECF No. 48-1 (cleaned up).  Elsewhere, and still before this lawsuit was filed, Wambles wrote that he "filed grievance and all but nobody will . . . respond to them.  I think they are being thrown away."  *See* ECF No. 35-2 at 7 (cleaned up).  The Report and Recommendation does not address those contemporaneous statements, both of which raise serious questions about whether Wambles had an "available" administrative remedy to exhaust.

Given the gravity of the allegations here, and that often "by the time a case is dismissed for failure to exhaust, grievance deadlines will have long since passed" rendering it impossible for a prisoner to start over, the undersigned's decision to recommit this matter is made out of the abundance of caution.  *See Perttu v.*

---

[4] The Court, of course, does not reach the merits of Wambles' underlying claim or decide, one way or the other, whether there was an administrative remedy available to him.

CASE NO. 3:24-cv-173-MCR-HTC

*Richards*, 145 S. Ct. 1793, 1805 (2025).[5]  After ensuring that Wambles has an opportunity to develop a factual record, Judge Cannon is directed to hold an evidentiary hearing on the grievances Wambles claims were lost, destroyed, or intercepted by prison staff at Walton CI in September 2023.  Another report and recommendation detailing Judge Cannon's findings, reasoning, and conclusion should follow.

Accordingly, the Report and Recommendation, ECF No. 58, is **NOT ADOPTED** and this matter is **RECOMMITTED** to Magistrate Judge Cannon for further proceedings consistent with this Order.

**DONE AND ORDERED** this 9th day of August 2025.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[5] Nothing in this Order, however, necessitates revisiting the Report & Recommendation's reasoning and conclusions as to the "2024 Direct Grievances" filed by Wambles.  *See* ECF No. 58 at 7–9.

CASE NO. 3:24-cv-173-MCR-HTC